Please call the next case. Counsel, you may proceed. Thank you, your honor. Ted Collison on behalf of the petitioner. Appreciate it, counsel. May it please the court. Three issues on this case. It's been briefed extensively. One is a union compensation entitled to an 8D1 claim. Two, is an individual who is incapacitated or unable to partially perform their usual and customary line of employment with restrictions from two doctors, an FCE, and an IME qualified under an 8D1. And number three, as a result of the injuries and the impairment as to wages. Because he cannot perform the duties as he did pre-injury and forums that have additional compensation are no longer available. Mr. Collison, is this case a first impression? I think it is. I think it's a very unusual, factually specific case. Yes. I mean, you touch on it because as I understand it, he is not precluded from his line of employment per se, but he is precluded from participating in some of the venues that he normally would as part of the usual course of his work, right? I agree with that, yes. And he's precluded because of the restrictions set forth by his treating physicians, as well as Thomas Markwardt, who we saw both in O2 and O8. And I'm just going to go along with that for just a second. What is this fellow's job? His job is defined by Exhibit 16, which is the job description from the union, and Exhibit 17, which clearly identifies the kind of venues this man had available to him pre-injury. It's massive. The job is massive. It's heavy. He was a participant for 27 years, and in O2, he had an accident. The accident in O2, he had wages of $97,000. By arbitration time, he was down to about $90,000. The reason for that impact in our position is because of the restrictions placed upon him. He had a three-year period where he tried to live with his injury. He couldn't deal with it anymore. In O6, in June of O6, he had an operation, a back operation. He returns to work in September of O6. Dr. Cucci and Dr. Sittow say, look, you have lifting limitations. You have bending limitations. You have pushing limitations. Those limitations, if you look at those just on its face, and you go right to Exhibit 16, it doesn't work. You can't perform all of the duties as a stagehand per Exhibit 16 with those restrictions. But it goes on. He has a functional capacity evaluation in October of 2007. That functional capacity evaluation says that he's able to do heavy-duty work, but they defined it as lifting 53 pounds from 9 inches above the ground to his waist. However, the functional capacity evaluation is very important because it also says that his abilities are not commensurate with his job description. There are things he can't do because of his injury, such as push more than 39 pounds of force. Again, if you go back to 16, it's impossible for him to perform all of his duties if he can't push more than 39 pounds of force. But the FCE went on even further. The FCE noted a loss of lordosis. It noted tremendous loss of motion, 50% loss of motion. It measured very carefully the abilities of the petitioner. It was validated by the tests of blood pressure, heart rate, and by the observations of those people who performed. But look what happens. Lo and behold, 10 days later, Bernstein, Dr. Bernstein, at the request of the respondent, I don't even think he exams or he has a meeting. Why do I say that? Well, on page 1 of Dr. Bernstein's report, he says the functional capacity evaluation is not available for his review. On page 2, he finds it. On page 2, he notes the capabilities of the petitioner are not commensurate. In other words, he can't do all of the necessary jobs and functions per the FCE, but he ignores any comment. He takes no measurements. There is no measurements as far as loss of motion. He says he hops up on the table, he's fine, he's cured, he's A-OK. Now, he's right in between the treating physicians who say, whoa, he has restrictions, they're permanent, he needs a job change. That's in 06. Bernstein's in 07. FCE is right before it by 10 days and note all kinds of deficits, so maybe it's a neuro-cure. And then in 08, Tucci and Marquardt, who saw him twice, both say that there are limitations. Marquardt, sent to him by us, says, look, he has limitations of lifting, he shouldn't bend, he shouldn't climb. This man's life is climbing rope ladders. Not four rungs on a ladder as in the FCE, but rope ladders. He has a limitation of functional inability to perform the duties of his job. And what did that mean to him? It meant that he could not have the venues available to him that he did before. This is an unusual set of circumstance, an unusual job, because you want to get as many hours in as few days as possible. Why? Because everything escalates. In other words, if you work 16 or 20 hours a day, you get a premium time. You get show time, you get double time. If you don't do that, and that's not, it's not voluntary, by the way, it's mandatory, because once you go on the job, you're on the job. So he lost that opportunity. He tried one time, after his back operation in 2008, to return to Rovinia, and he said candidly in his deposition, I can't do it. It hurts too much, the pain is too much, I have to stop. And he lost Rovinia. That by itself was a substantial wage loss. How do we quantify this in a sense? The FCE said that he was able to perform 9 out of 10 physical requirements. There was only one that he couldn't perform. So does that restrict him from Rovinia or other venues? How do you categorize this then? Well, I categorize it as because of the restrictions in the FCE and because of the loss of motion, which is also contained in the FCE, that he has venues that are no longer available, including Rovinia. And Rovinia was at great length, by the way, evaluated, because you're one of 10, 10 people that do the whole job. You can't be the weak link and have somebody else cover for you like you did at the Allstate, the arena, because everybody has to participate in 100% of the activities. Unloading semis, moving heavy cable, the weights of these objects as revealed in Exhibit 17, the pictures of the stadium, the climbing up the ladder, you have to do it all by yourself. So yes, I think it is very specific in there. And you'll also find other, I think, very objective criteria in the FCE, and that is he has a loss of lordosis, he has a tremendous loss of motion both to the left and to the right, and of bending. Is Rovinia the only venue or job that he's not able to perform? No, Judge. We went through, there's a whole list that we calculated. Any outdoor venue, as reflected in Exhibit 17 with those pictures, he can't participate in anymore. And you can see why. If the doctor says, don't climb these rope ladders, and you look up literally 50, 60, 80, 100 feet, he can't perform it. So all of the big venues, we calculated his wage in three different ways. One, if he worked the same amount of hours and had the same opportunity to the forms that were available, the letter from the President of the Union said every year they've gotten a 3% increase. His average weekly wage or his salary would have gone from $97,000 to $124,000 just by the minute. That's one. In other words, if he works the same hours and he had the same opportunity to get the additional compensation for show time, for double time, the increase in the base pay in and of itself and across the board would have had him as an average weekly wage, or I'm sorry, as an annual compensation of $124,000. That's number one. Number two, the loss of Rovinia and the shows would continue is at least $30,000 a year. And he testified how he calculated that loss. If he showed up somewhere else, he deducted what he got from another venue from what he would have been able to earn. Am I mistaken? My understanding of the facts is he gets the same union wage now that he did before? He has not been reduced in his hourly rate at all? The base hourly rate, you're correct. The base hourly rate is correct. But what he has lost is the availability to go on those venues where there's extended hours in a short daily period. That's overtime. Well, it isn't really overtime. In a sense, it's show time. It's compensation for being on the job 20 hours a day, 18 hours a day, as he testified. It would have to be overtime any time over 8 hours. There's no fair wage requirement. It's overtime. So it doesn't go into... It was mandatory... It doesn't go into the calculations of the average weekly wage unless it's mandatory. It is mandatory. It's mandatory job by job? It's mandatory job by job. If you walk out of the job, you have to finish the job. Stern said it, Bowick said it, and especially at Lavigne, and the petitioner said it. You can't leave a... You can imagine if the stagehand walked out and tried to change or tear down a venue. I mean, it would be impossible. They have to finish the job. Just one more comment on Dr. Bernstein. I think that the Bernstein report is certainly against the manifest weight of the evidence. I think Edgecombe and I think Clark clearly say that, look, if you have a cursory report, that does not meet the standard of a substantial foundation in evidence and this report must be set aside. The doctor has a job description which he ignores. He has comments from an FCE that he ignores. He has pictures of the job that he ignores. There's not one indication that he took a measurement and if there was ever proof positive that this is a cursory examination at the bottom of his report he says, dictated but not read. He never even bothered to read his own exam and it is fraught with inconsistencies with the treating physicians as well as Thomas Marquardt who saw him twice at our request. I think as a matter of law that the petitioner is entitled to an 8D1 in this case, I think he is partially incapacitated from performing his usual and customary occupation that he did for years. It's a very unique job that offers an opportunity if you're physically able to do it, to rack up the hours in a short span of days and secure the mandatory concept of overtime and be paid commensurately. If you recall the record in here says that in one day in Rovinia he made $4,000. That venue, that opportunity is lost to him forever because of his restrictions because he can't comply with all of the requirements to tear down, to strike the sets, to raise the heavy equipment, to take the heavy cables to move the heavy sound equipment We're aware of all that quite extensively here. What you're trying to say is that his usual and customary line of employment is what? His usual and customary line of employment is identified and defined in Exhibit 16. And he can no longer engage in the full performance of his duties in the occupation in which he was engaged. Is that what you're saying? That's exactly what I'm saying. And that's in the statute? Yes. And there was an impairment in his earnings as a result. As a consequence. Thank you. Good afternoon. May it please the Court. My name is Paul Sherline and I represent the defendant, Appleby in these proceedings. My esteemed colleague who just argued ignores I think some elephants in the room on this case and that's what I would like to address. The first one being he makes no mention of the fact that what he is asking this Court to do is to re-weigh the evidence and the commission that is distinctly a function of the commission in this case. And he also ignores the fact that it's the burden of proof is on the plaintiff. Now the plaintiff presented testimony from only two witnesses himself and a Mr. Ed Dolick who was a union journeyman stagehand who worked at Ravinia and was the electrician department head. That was it. Now there were medical records submitted which were all in the record but there was no testimony from any medical providers there were no evidence depositions there was no testing of the opinions of those doctors so that everything that counsel argued about those medical records was his opinion not based upon really anything in the record except reading what he wanted to read into those records. And there was no testimony from a vocational specialist. Now one of the other key and the entire argument rested upon the fact really the only fact that the plaintiff was unable to work at Ravinia really that's the focus of their case and the problem there is that plaintiff self-restricted himself from working there it wasn't the most articulate way of saying it but he made the decision not to work at Ravinia nobody told him that he couldn't so I think that's an important point to remember and that's one of the key points in this case Counsel let me ask you this the argument can be made he's still in the same profession the same line of work that he was before the accident I think that's we get there what about this first assist case where we had affirmed the commission's award of a wage differential to a nurse who was an operating room nurse she was then injured and she was an office nurse arguably she's still in the same profession still in the same line of work albeit in sort of a different position why is this case not similar to first assist well first assist is very different in that case there was a conclusion that all registered nurses do the same job and basically get the same pay it's the same thing and in that case she the claimant had been an operating room nurse which was a very high rate of pay on the registered nurse scale and you know she was injured while working there she was placed on permanent restriction of lifting 25 pounds and no activity above the shoulder by the doctor there was no contest about that and first assist did not offer her a job within those restrictions and she was terminated now she requested vocational rehabilitation services which she received and she eventually got a job as a clerical nurse which only paid $19 an hour as opposed to $43 and the testimony demonstrated that the different nursing positions do not perform the same functions and do not receive the same pay and in that case there was strong vocational expert testimony so there was a basis for the commission to weigh the evidence and make that decision and that's not the case here let me ask this, quoting the decision we found that the evidence had established that although all registered nurses might be members of the same profession all stage hands are part of the same profession in that case we held they do not perform the same functions so what about the argument is he can't perform the same functions that he used to be able to perform that is Ravinia and the other demanding venues well that doesn't really that conclusion doesn't really fit in with the evidence that was presented to the commission and reviewed by the circuit court he is and he was and still is now I don't know to this day but up to the time of the arbitrate the proceedings before the arbitrator he is a union journeyman stage hand and there was very confident testimony from Mr. Stern who was the general manager of the Rosemont theater, the defendant here and he testified and this is part of the evidence that was weighed by the commission that setting up shows at Ravinia is not the same as setting up similar shows at Rosemont and that it is heavy work but it's heavy work at all of the venues there can be anywhere from 4 to 6 to 10 semi-trailers of equipment that has to be unloaded whether it's Rosemont Theater United Center Allstate Arena or Ravinia and there is no his testimony was there's no rule on what a stage hand must lift and if it's too heavy you get help from somebody else and he testified that if you can lift 20 to 25 pounds you can do your job and there were no restrictions from any of the doctors the FCE So you're saying contra to that you have the claimant saying Ravinia does not fall within that category and you're saying Stern says yes it does Exactly and that was weighed by the commission by the Charter of Fact and you're saying that he self-selected the venues in which he was working and you're saying that there was no reason for him other than his own testimony that it's more than minimum 20 to 25 pounds that's right because he didn't report those restrictions to any of his employers now remember each venue is a different employer and the union is not his employer but they're the ones that call him up for him to get the jobs So Was it really that subjective because wasn't the therapist talked about he could not perform a two-hand frequent pushing and there's a calculation there Wasn't that in there? Isn't that some objective measure of a restriction? Well that was in that report but that report said that he could do heavy lifting and he said it matched the job description for a journeyman stagehand  Even at Ravinia? Even at Ravinia He didn't make a distinction between Ravinia and any other venue and at times the plaintiff testified well I can't work at United Center or I can't work at these big heavy venues but then he goes on and you'll see in the record in 2008 and he works at those venues so these were all things that were weighed by the commission and they made that decision based upon the manifest weight of the evidence and I think properly so Counsel, what was the claimant's usual and customary line of employment prior to his injury? Journeyman stagehand Union journeyman stagehand And what was his usual and customary line of employment after the injury? The exact same thing He's been a union journeyman stagehand his entire career and up until the time of arbitration for the proceedings before the arbitrator and I think maybe through the present And is that in essence your argument? Excuse me? Is that in essence your argument as to why a wage differential award is not appropriate? Exactly Well, do you also assert that he did not suffer an impairment of earnings don't you argue that he just didn't take jobs he could have took? Right, he voluntarily took less and if you look at the Durfee case the Dawson case you know all of those cases where the claimant made his own decision not to do the work and accept less pay and that has never been an acceptable means of determining an impairment but you don't really even have to get to that issue because he's working in his usual and customary line of work You say he did not suffer a partial incapacity that prevents him from pursuing his usual and customary line of employment? Correct Well how broadly I guess let me ask a point of question how do you define usual and customary line of employment he's saying my usual and customary line of employment is working at Ravinia in other venues without restriction so if arguably he can't work at every venue isn't that affecting his customary and usual quote unquote line of employment Yes, but he's the only one that's saying that and it has to be taken in the context of all of the evidence and I mean I think that's the main problem So what you're saying, it's a proof issue, not a conceptual issue, but a proof issue Exactly, I mean he did get a disability award but he did not prove his entitlement to an 8D1 award Any other questions? I don't believe there are Thank you, counsel Counsel, you may respond Reply, Randy Mr. Counsel, in the course of your response to rebuttal counsel seems to be alluding to this  case, lack of proof that he cannot prove his entitlement to an 8D1 award He cannot work at Ravinia any more than he could work somewhere else So how do you respond to that? I can respond to that very quickly There's only one piece of evidence that says this man is unrestricted and that is the report from Bernstein and nobody believes Bernstein Why do I say that? Because Bernstein flies in the face of the objective findings that were analyzed and quantified in an FCE 10 days before Bernstein Bernstein's not believed because his report does not include a measurement Bernstein is not believed because he didn't take an x-ray Marquardt took x-rays pre and post Bernstein exam Those x-rays according to Marquardt's opinions went to show that the injury caused the change in this man's back that necessitated the restrictions that prevent him from going to the venues that were always available to him It's a very interesting argument that counsel makes that somehow we should have requested vocational training The law doesn't say that The commission rule 711.0 in section 6 of the act clearly put the burden on them if there was any question but just to make us all feel better where in the world would a guy who has a high school education who works the number of hours he did get paid $90,000 he did a wonderful job nobody raised that until right now I mean that's just not an objection The people who said he could not perform his duties by the way if you go to Ed Dolick Ed Dolick said I can't have a guy on my staff who can't do the activities that are contained in exhibit 16 which is the job description that's on the back of our brief Stern even says that different venues have different requirements for lifting and for physical exertion and that's the point all of these things have been removed from him he doesn't have a choice anymore if you really look at the hours and by the way exhibits 17,18,19 calculate the hours some are respondents exhibits the man is still working hours the only thing he can't do is he can't avail himself of the benefits of the hard work and the intense exercise and exertion that Ravinia and the larger venues afford him and that's why he's losing his wages it's not only Ravinia it's all of the other venues that are large show you can have the Nutcracker out here in Grand Park that's a far different show than Metallica I mean it's just Can we take additional notice that Nutcracker is different than Metallica? I think we can but the point is the amount of equipment the kind of equipment the way the show is run the breakdown all of those things have changed and again I think that even the commission didn't believe Bernstein's report because they awarded him 35% of a man but I think they failed to apply AP1 which was very much a fluke I'd be happy to answer any questions I believe there are thank you council thank you council both for this matter and a written disposition shall issue